Van Vorst, J.
The open board of brokers is not a corpora- ’ tion; the obligations and rights of its members are not determined or fixed by any statutory enactment, general or special. It is not a joint stock association. There has been no contribution of capital by its members for the prosecution of business of any kind by the association. There has been no stcfbk *325 issued to its members, nor can the individual members claim any rights of property in it as stockholders.
The association is engaged in no business, and does not devote its funds to the prosecution of any undertaking to produce profit or gain to its members; nor is it a copartnership; in its organization, the essential features which characterize a partnership are wholly wanting. There are no profits earned to be divided among the members, nor are there losses to be borne.
The constitution—the contract between the parties—does not establish copartnership relations between the members; the associates do not hold themselves out to the world as copartners, nor is there anything to show that they regard themselves, the one to the other, in that relation.
The association looks to a continued existence, unaffected by the death, resignation, suspension or removal of its members. If it was a simple copartnership, the death or retirement of an associate would dissolve it.
It is an established principle in the law of partnership, that if it be without any definite period, any partner may withdraw at a moment’s notice, when he pleases, and dissolve the partnership, and the civil law contains the same rule. (3 Kent's Com., 53.)
The death of either party is, ipso facto, from the time of the death a dissolution of the partnership, however numerous the association may be.
But in this organization, although individual members retire, die or are expelled, the body lives.
The status, rights and obligations of this plaintiff are not therefore to be determined by a consideration of this association in the light of its existence either as a corporation, joint stock assocation or copartnership.
The Open Board of Brokers is a voluntary association of persons, who for convenience in the transaction of business with each other, have associated themselves to provide a common place for the transaction of their individual business, agreeing among themselves to pay the expenses incident to the support of a “Mart,” in which each for himself, at stated hours of the day, and for his individual profit may prosecute his own *326 business and enter into separate engagements with his fellow members. The association does not share in the losses of the individual associates, each member takes his own gains, and individually sustains the losses incident to his engagements. The organization of this board grew out of a necessity for “ new and greater facilites for exchange and negotiation incident to the rapidly developing interest of the country and the increasing number and value of its commercial securities.” As the number of these securities had been largely augmented; so too the body of persons who dealt in them as purchasers and sellers for others had greatly increased, and new organizations were required to be formed and new places of business appointed to meet the wants of a growing and increasing business. The persons who formed this association were brokers. It is stated in the constitution that no person was eligible to membership unless he possessed a government license as a broker. A broker is an agent simply. He transacts business not for himself, but for another. He is a middle man, a negotiator between other persons for a compensation.
A stock broker deals in stocks of moneyed corporations and other securities, for his principal. It is a calling of great responsibilities, in which punctuality, honesty and knowledge are required.
Acting as the stock Broker does for others, it is important that all the engagements he enters into should be promptly and faithfully fulfilled, both by himself and the party for whom he contracts. Hence, the language of the agreement of the original associates is suggestive; “ such business can only be transacted where there is the utmost confidence, and such confidence is begotten only by public, open, fair and upright transactions where every party interested may and can know where and how such business is done ’’—and, hence, “ a great public Mart ” open to all the associates was desirable.
It follows from the very nature of such an organization, with such objects, intents, and purposes, that there must be rules and regulations for the good order of the association, and such rules should be held to be conclusive as to tho *327 mode of transacting business between the members, and as to the privilege of admission to, and continued enjoyment of, membership.
As this association is not organized in pursuance of any statute, nor are the terms of membership fixed by principles of the common law, it follows that the agreement which the members make among themslves on the subject must establish and determine the rights of the parties on the subject, The constitution of the association, and its laws agreed upon by the members, contain all the stipulations of the parties, and form the law which should govern. The members have established a law for themselves. No person is entitled to membership in the Open Board of Brokers except he is approved by the appropriate committee, voted for by the board, and shall agree to, adopt, and affix his name to the constitution, and, having done this, each member should stand by his contract. Each member is under an obligation to support it himself in all its details, and is under a duty to see to it that it is supported by others. “ As a means of mutual protection, it is declared, by the by-laws, to be the duty of every member to report to the Board all cases of defalcation of contract of other members, and all causes of refusal or inability to pay differences.”
The very existence of this body depends upon the faithful observance of its organic law by all its members.
The court must regard the constitution and laws of this board as the contract by which all the members are bound. The court cannot make any other contract for the parties than they have solemnly made for themselves. It is not the province of courts of law to make contracts for parties. It may explain, interpret, enforce, and, in some instances, where contracts are hard and unconscionable, relieve from them.
But there is no claim in this suit that the terms of this constitution, adopted by the plaintiff, are hard and unconscionable. The plaintiff does not ask to be relieved from his membership, he rather demands that he may be allowed to remain in the association, under the constitution; he does not wish to be suspended, or have his connection determined and ended. In an organization of the character of the Open Board of *328 Brokers, with its several hundred members, the business transacted at its rooms being daily large in amount, and the stocks and securities dealt in being ever fluctuating in value, it was not unreasonable to apprehend that there would be constantly .occurring differences between members, acting as agents for others, in regard to the terms of contracts, and as to the obligations and duties of. contracting parties under agreements often hastily made.
The temptation to avoid a contract in a rapidly rising or falling market, as the pecuniary interest of a party might prompt, rendered it imperative that some tribunal in the body of the association, should be appointed and agreed upon, to take cognizance of and exercise jurisdiction over all cla.ima and matters of difference which might arise between members of the board. This appears the more important, as confidence in each other, and in the engagements which they might make, one with the other, and in the fairness, openness, and uprightness of their transactions, and in the certainty that their engagements would be fulfilled are announced as the causes which led to the organization. To be effective, their decisions should be prompt. As these engagements would be constantly maturing, it was eminently proper that a tribunal should be near to render speedy and exact justice. Confidence is the real life of such engagements; hence, the appointment of a committee of arbitration is a prominent feature in the constitution of this board, and, by the express assent of each member, jurisdiction is awarded to this committee in advance" of all claims and matters of difference which might arise between the members. The associates have agreed, among themselves, that the decisions of this committee shall have conclusive force, and that the members shall be bound by them; and each member is truly bound by such decisions so far as they are made the basis of subsequent action in the board to secure its good government under its constitution.
Let us apply the above principles to the case before us. A claim and matter of difference arose between the plaintiff, a member of the board, and Currie, Martin & Co. also members, growing out of their respective rights and obligations, under a contract for the purchase of 1,000 shares of Hudson *329 River Railroad stock, agreed to be sold and delivered by plaintiff to them. This contract was made at the board, and between its members. It was in respect to a transaction embraced directly within the objects and purposes for which the association was formed. Currie, Martin & Co., claimed the right, under the contract, to subscribe for the increased stock proposed by the railroad company to be issued, and they elected to do so, and looked to plaintiff for the same. This claim to subscribe for the additional stock was not admitted by plaintiff. Currie, Martin & Co. claimed of plaintiff a deposit of additional margin under the contract, which was refused ; they then notified plaintiff that they should, under the rules of the board, purchase 2,000 shares of said stock on plaintiff’s account, against which proposed action plaintiff protested. The stock was bought by the president of the board under the rules, of which plaintiff was notified. He refused to recognize the transaction, or pay for the stock, and Currie, Martin & Co. paid for it, and made a claim and demand on plaintiff for a large sum of money, the difference in their favor. The justice of the claim was denied, and its payment refused by plaintiff.
This was a claim and matter of difference over which the arbitration committee had jurisdiction so soon as the case should be brought before it. It was presented to the committee by the claimants, and an examination and adjudication upon it demanded. A day for hearing was appointed, and plaintiff summoned to appear and answer, and interpose his defence. The plaintiff declined to appear before the committee, claiming that there was nothing to be submitted, and that there was no difference between him and Currie, Martin A Co.
Now, the facts clearly show that there was a real and substantial difference between these parties; claims were presented on the one side to a large amount, growing out of the contract, and denied on the other. H the parties had agreed in regard to their respective rights, then there would have been no claim or difference, but they were very far apart, The question is not whether the claim of Currie, Martin & Co. was right or wrong in itself, just or unjust. There was a difference, which *330 was to be adjusted, and of which the plaintiff, when he became a member, had agreed that the committee should take cognizance. The plaintiff seems to rest in, the belief that because he denied that Currie, Martin & Co. had a claim, that therefore there was none in them favor; he would decide the matter for himself. Row it happens that much of the real business of courts of law arises from the assertion of a claim, by the plaintiff and its entire denial by the defendant, yet the action proceeds to trial and final determination, and it is no uncommon occurrence that the party who denies the claim fails in his defence.
A claim “is a demand of a right or a supposed right, a calling on another for something due, or supposed to be due.” (Webster's Dic.)
And whenever there is a disagreement in opinion in regard to a contract, or a matter in controversy exists between. the parties to it, there is a “difference” such as the committee might properly adjudicate, and of which it was bound to take cognizance.
The committee, in the absence of the plaintiff, heard and determined the matter upon the statements of the claimants, and rendered judgment in their favor. Plaintiff had a right to appear and make his objections, and set up his defence; this he refused to do. After the award was made, he could perform it and retain his rights as a memberthis he declined to do. He might appeal to the board of appeals, and this he refused to do. Having made up his mind that Currie, Martin & Co. had no claim, he concluded that, he need interpose no defence, nor take any steps to reverse the decision, and could treat the award as a nullity. The plaintiff cannot assume this position and still claim the rights of membership. He cannot invoke the aid of this court to protect him in all the rights and advantages of the association, and which he alleges are a great source of benefit to him, and still be allowed to disregard his duties under the constitution and laws of the board.
The plaintiff agreed, when he became a member, that the arbitration committee should take notice of all claims and differences between members, and that he would be bound by their decision. He refused either to acknowledge its conclu *331 sive force, in a case in which he was interested, or to appeal from its decision. The constitution must be taken as a whole. The contracting part is an entirety. All its obligations are to be assumed and discharged; all its benefits are to be enjoyed. The enjoyment of the latter depend upon the performance of the former. Were it otherwise, the association would be of no real advantage to its members. It clearly appears that good faith in the observance of the constitutional obligations of the members was intended to furnish a test for the right of continued membership.
There was some discussion on the argument of this motion as to the right of the plaintiff to revoke- his consent to the jurisdiction of the arbitration committee over the claim and difference in question. In an action in a court of law to enforce the award, such question might be raised. For the purposes of this action, under the facts of the case, it can give him no relief. If the plaintiff would revoke the part of his agreement with his associates which imposes duties and obligations upon him, he cannot insist, in a court of equity, that he shall be protected in the enjoyment of rights and privileges created by the same contracts. He that would have equity must do equity.
After the action had before the arbitration committee, no appeal having been taken, proper steps were taken to bring the facts and circumstances involved in this controversy be-, tween plaintiff and Currie, Martin & Co., and the default of plaintiff, before the committee on membership. The matter was investigated, and this committee reported to the .president of the board that plaintiff was in default under the contract. The president of the board, as was his duty, declared the plaintiff suspended.
This suspension operates as a deprival, during its continuance, of all plaintiff’s privileges as a member, including an ex-: elusion from the rooms of the board; but this declaration of suspension is not final. There is reserved to the plaintiff a right of appeal to the executive committee. The jurisdiction of this committee is ample to render and do complete justice. It has full power to hear and investigate the matter, and to re *332 port the result to tie board itself; if it shall appear, that the suspension is just, it shall be confirmed; otherwise it' shall be annulled. The plaintiff has taken such appeal to the executive committee. He has placed his case in a way to be investigated, and finally decided by the board itself. Having gone thus far he pauses; he fails to prosecute his appeal; in fact has forbidden the appropriate tribunal to take cognizance of his appeal.
At this step, and with his appeal pending, he asks this court in effect to annul all that has been done by the association in the investigation and disposition of this matter by the officers and committees of the board. He asks this court to restore him to and protect him in the enjoyment of all his privileges and rights as a member, to give him regular standing in the organization, although its records show him to be in default, and the decree of his suspension to be unrevoked.
There are allegations in the complaint which claim that some of the members of • the committee had prejudged the plaintiff’s case ; but in the protest which plaintiff served upon the committee, he does not place his refusal to submit or appear on any such ground. He makes no objection to the competency or fairness of the committee. He expressly assigns for his refusal, that no matters of difference have arisen between him and Currie, Martin & Co., and that they have no claim. If any such objections as he now mentions, existed, he should- have asserted them at the proper time, so that appropriate action could be taken by the association of which he was a member.
The plaintiff also charges the officers, committees, and a portion of its members sufficient to control its action, with a disposition to deny him justice, and deprive him of his rights; but all the allegations on the subject are denied by the answer pf the president.
This court, under its equitable powers, can give the plaintiff no relief under the facts disclosed. Plaintiff has unexhausted remedies for all his complaints and grievances, under the constitution and laws of the board. There is no occasion for the intervention of this court. When he became a member *333 he submitted to its laws, which afford full and complete relief. The equity of the complaint is denied.
Motion to dissolve injunction granted.